Helen **MYERS**, Plaintiff,

v.

**KING'S DAUGHTERS CLINIC,** Defendant.

Civil No. W–94–CA–260.

United States District Court, W.D. Texas, Waco Division.

Jan. 9, 1996.

---

234

Jon R. Ker, Hewitt, TX, for Plaintiff.

Robert D. Kilgore, Daniel R. Stern, Foster, Heller & Kilgore, P.C., San Antonio, TX, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WALTER S. SMITH, Jr., District Judge.

This case came on for trial before the Court without a jury on the 11th day of December, 1995. Having considered the evidence and argument of counsel, the Court makes the following findings of fact and conclusions of law:

#### Findings of Facts

1) Plaintiff was employed by Defendant from November 26, 1990 until December 3, 1991 when she was terminated for absenteeism.

2) At the time of Plaintiff's termination from employment, Defendant's health protection plan was a self-funded benefit plan subject to ERISA, 29 U.S.C. § 1001, *et seq.*, and more specifically, the provisions of COBRA, 29 U.S.C. § 1161, *et seq.*

3) Plaintiff's termination was a qualifying event under COBRA, 29 U.S.C. § 1163(2).

4) Defendant was the plan administrator for its group health plan.

5) COBRA requires that the plan administrator provide notice to employees of their COBRA rights upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4)(A).

6) Plaintiff maintains she did not receive this notice of her COBRA rights.

7) To assure that the employees receive their COBRA notice upon the occurrence of the qualifying event of discharge, the secretary, Lynn Fisher, would take a packet of COBRA-related information, including the COBRA notice, prepare a mailing label with the employee's last known address, affix the mailing label to the packet containing the COBRA information and notice, place the labeled packet in the outgoing mail bin, and record on the affected employee's termination report the date the COBRA packet had been prepared.

8) Ms. Fisher prepared Plaintiff's COBRA packet and marked Plaintiff's termination report with the notation that the COBRA materials had been sent December 10, 1991.

9) From the outgoing mail bin, mail would be picked up by a mail clerk, Greg Garth. Mr. Garth would place proper postage on the mail, assure it was addressed, and put it into mail bags which were retrieved daily by the United States Postal Service.

10) Plaintiff claims she did not receive her notice of COBRA rights, and that failure to receive notice was the reason she did not elect COBRA coverage.

11) Plaintiff changed her residence address twice during her employment, the last time being about six (6) months before her termination.

12) The COBRA notice mailed to Plaintiff was not returned to Defendant as undeliverable.

13) It is more likely than not that Defendant properly placed the proper COBRA notice in the United States mail addressed to Plaintiff's last known address.

14) Defendant made a good-faith effort to forward notice of coverage availability to Plaintiff at her last known address.

15) Plaintiff did not notify Defendant of her last change of address.

16) Any finding of fact that should more appropriately be a conclusion of law is deemed so.

### Conclusions of Law

1) Section 1166(a)(2) of COBRA provides that an employer of an employee covered under a plan must notify the administrator of the plan of certain "qualifying events" within thirty (30) days of the event. 29 U.S.C. § 1161(a)(2). Section 1163 includes in its definition of qualifying events the termination of the employee. Section 1166(a)(4)(A) requires the plan administrator in turn provide notice of COBRA rights to the employee.

■ 2) Other than requiring that the notice be in writing, § 1166(a)(2) provides no guidance on the manner in which notice is to be provided to the individual. Other courts that have reviewed this issue have held a good-faith attempt by the employer to comply with a reasonable interpretation of the provision is sufficient. *See Jachim v. KUTV, Inc., et al.,* 783 F.Supp. 1328, 1333 (D.Utah 1992); *Truesdale v. Pacific Holding Co./Hay Adams Div.,* 778 F.Supp. 77, 81–82 (D.D.C. 1991); *Dehner v. Kansas City S. Industries, Inc.,* 713 F.Supp. 1397 (D.Kan.1989). *See also Kidder v. H & B Marine, Inc.,* 734 F.Supp. 724 (E.D.La.1990) (applying good-faith compliance with reasonable interpretation standard to notice given by group health plans), *reversed in part,* 932 F.2d 347 (5th Cir.1991) (upholding District Court's determination regarding manner of giving notice). These courts have approved the employer's methods of giving notice where those methods were reasonably calculated to reach the employee. *Dehner,* 713 F.Supp. at 1400; *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1534 n. 11 (M.D.Ga.1991). Thus, an employer complies with § 1166(a) by sending notice via first-class mail to the last-known address of an employee. *Truesdale,* 778 F.Supp. at 81–82.

■ 3) Use of first-class mail was the procedure used by King's Daughters Clinic. The Court finds that Defendant sent the notice pursuant to a procedure that constitutes a good faith effort to transmit a COBRA notice to Ms. Myers. Lynn Fisher was the employee responsible for addressing COBRA notices at Kings' Daughters Clinic. She testified that once addressed, they were placed in a bin for postage. A mail clerk, Greg Garth, would collect the mail from each of the bins. He would check the address of each item to insure that address appeared facially complete. He would then weigh the item and place proper postage on the letter. Mr. Garth placed each item of mail into a United States Postal Service mail bag, which would be retrieved by a United States Postal Service employee. This was standard procedure for all mail at King's Daughters Clinic. Lynn Fisher would note on termination reports that the notice had been mailed. This was done in relation to Plaintiff. Notice was sent in a good faith manner calculated to reach the employee. Plaintiff did not produce any evidence that the mailing was not done pursuant to company procedure. Thus, the COBRA claim should be dismissed.

■ 4) Plaintiff claims that she did not receive her notice, thereby negating Defendant's proof. However, the cases cited by Plaintiff are inapposite to the case at bar, because in this case the employer presented evidence of the customary mailing practices used in its business and, more importantly, its business records reflected that the notice had been sent. As noted by the court in *Lawrence v. Jackson Mack Sales, Inc.,* 837 F.Supp. 771, 783 (S.D.Miss.1992): "This court shares the view of the *Jachim* court that § 1166 does not require proof that the notices required by that section be received."

■ 5) The limitations period contained in 29 U.S.C. § 1113, contrary to the Plain-

tiff's assertions, does not apply to causes of action based on violations of the provisions contained in COBRA. Section 1113 applies only to causes of action based on violations of the provisions contained in Part 4 of Title 29, entitled Fiduciary Responsibility. *Starr v. JCI Data Processing, Inc.*, 767 F.Supp. 633, 637 (D.N.J.1991); *Wise v. Dallas & Mavis Forwarding Co.*, 753 F.Supp. 601, 606 (W.D.N.C.1991). A cause of action that does not allege a violation of a fiduciary duty, e.g. a cause of action not brought pursuant to Part 4, is not governed by the limitations period contained in section 1113. *Lugo v. AIG Life Ins. Co.*, 852 F.Supp. 187, 195 (S.D.N.Y.1994). Since Plaintiff's COBRA cause of action is not asserted pursuant to Part 4, the limitations period contained in 1113 does not apply to her claim.

6) Because COBRA does not contain a statute of limitations, the Court is required to "borrow" the most suitable statute or rule of timeliness from some other source. *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). When a court is required to borrow a statute of limitations, the court generally uses a state limitations period, unless a sound reason for doing otherwise exists. *Id.*, at 158 n. 12, 103 S.Ct. at 2287 n. 12; *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192 (1966). In the present case, the most analogous state statute is Texas' two year statute governing unfair insurance related practices. *See* Tex. Ins.Code Ann. Art. 21.21, sect. 16(d).

7) The purpose behind COBRA's enactment was to provide employees with an opportunity to continue to receive group health insurance after the occurrence of a qualifying event, e.g. termination. In order to ensure that the employee has an opportunity to elect to continue insurance coverage, the statute imposes a duty on the employer to notify the employee of her right to continue health insurance coverage. However, the statute also imposes on the employee a duty to notify her employer of her desire to continue the health insurance coverage. If the employee fails to notify her employer within sixty days, a relatively short period of time,

the employer may assume that the employee does not want to continue coverage and may terminate the employee's health benefits. If the employee elects to continue coverage, COBRA requires the employer to continue coverage for 18 months from the date of the qualifying event. *Brown v. Neely Truck Line, Inc.*, 884 F.Supp. 1534, 1543 (N.D.Ala. 1995). The continuation of coverage requirements, therefore, are intended as a "stop-gap" measure designed to protect employees from medical expenses which might occur after the occurrence of a qualifying event, e.g. their termination. Because Texas' insurance limitation is also of a short duration, two years, the Court finds that using this period of limitations for COBRA claims furthers Congress' goal of providing health insurance coverage for a limited period of time after leaving their employment. Adopting a limitations period of three years or longer, as the Plaintiff suggests, would seem to be contrary to Congress' goal of providing limited health insurance protection to employees. Additionally, article 21.21, section 16(d) provides a limitation period for causes of action based on unfair insurance practices and failing to notify an employee of their right to receive health insurance could be characterized as an unfair insurance practice. Finally, the Court notes that it is unlikely that Congress intended ERISA's three year statute of limitations to apply to COBRA causes of action because ERISA's three year limitation period was enacted in 1974. 29 U.S.C. § 1113. Congress enacted COBRA in 1986. Thus, Congress knew how to include a limitations period for ERISA based claims. Adopting section 1113's limitations period for causes of action asserted for violating CO-BRA, a statute enacted after section 29 U.S.C. § 1113, would likely be contrary to Congress' intent of providing employees with a limited period of protection from medical expenses.

8) Plaintiff's argument to adopt Texas' residual or contract limitations period for CO-BRA causes of action is equally without merit. First, using a "catchall" limitations period like Texas' residual statute is not generally favored. *Halkias v. General Dynamics*, 31 F.3d 224, 235 (5th Cir.1994). Additionally, COBRA is a federal law that creates statuto-

**238**

ry duties and rights. It is not analogous to contractually imposed duties whereby two parties independently agree to rights and duties to govern their business/employment relationship. Thus, borrowing Texas' four year statute of limitations for contract suits is not warranted.

■ 9) During her trial, the Plaintiff admitted that she knew by March of 1992 about COBRA and her right to elect to receive continued health insurance coverage. Since the Plaintiff failed to file her lawsuit until September 16, 1994, her COBRA cause of action is barred by limitations.

10) Any conclusion of law that should more appropriately be a finding of fact is deemed so.

### JUDGMENT

On the 11th day of December, 1995, this case was tried before the Court without a jury.

In accordance with the findings of fact and conclusions of law entered by this Court, judgment is entered as follows:

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff, Helen Myers have and take nothing of and from Defendant King's Daughters Clinic.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that costs be taxed against the Plaintiff.

**IT FURTHER ORDERED, ADJUDGED AND DECREED** that this case is **DISMISSED** and that any and all pending motions not previously ruled upon by the Court as **DENIED** as moot.