Celia D. ROBERTS, Plaintiff,

v.

NATIONAL HEALTH CORP., and
National Health Corporation
Benefit Plan, Defendants.

No. 8:96–1913–20.

United States District Court,
D. South Carolina,
Anderson Division.

April 25, 1997.

Robert E. Hoskins, Greenville, SC, for plaintiff.

William H. Foster, George K. Lyall, Greenville, SC, for defendants.

## ORDER

HERLONG, District Judge.

This case is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and it is before the court on the parties' cross motions for summary judgment. The plaintiff, Celia D. Roberts ("Roberts"), worked as a nurse's aid for National Health Corp. ("NHC"). As an NHC employee, Roberts was a participant in the National Health Corporation Benefit Plan ("the Plan"). Roberts's last day of work was October, 23, 1993. Shortly thereafter, she was hospitalized from October 29, 1993, to November 11, 1993. Roberts filed this action on June 27, 1996, asserting claims for benefits and discrimination under ERISA and breach of fiduciary duty under the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA").[1]

On February 20, 1997, the defendants filed a motion for summary judgment on all of Roberts's claims. On February 28, 1997, Roberts filed a response voluntarily dismissing her benefits claim but moving for summary judgment on her COBRA claim. The defendants have filed a memorandum opposing Roberts's summary judgment motion.

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a

---

1. COBRA's provisions appear in ERISA, the Public Health Service Act, and the Internal Revenue Code of 1986.

verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if it might affect the outcome of the lawsuit under governing law. *Id.* A court must view the facts and inferences to be drawn in the light most favorable to the nonmoving party. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

## Discussion

Generally, COBRA requires that an employer provide an employee an opportunity to elect continuation coverage under the same terms of the employer's health plan after some qualifying event which would otherwise end the employee's health insurance coverage. 29 U.S.C.A. § 1161 (West Supp.1997). In the present case, termination is the relevant qualifying event. *See* 29 U.S.C.A. § 1163(2) (West Supp.1997).

The responsibility of notifying employees of their COBRA rights falls on the employer and the plan administrator. The employer must notify the administrator of a qualifying event within thirty days of the event. 29 U.S.C.A. § 1166(a)(2) (West Supp.1997). After receiving such notice, the administrator has fourteen days [2] to notify the employee of her right to elect continuation coverage. 29 U.S.C.A. §§ 1166(a)(4) (West Supp.1997), 1166(c) (West Supp.1997).

### A. *Proof of Notice*

■ Roberts argues that NHC failed to notify her of her COBRA rights subsequent to termination. Although NHC states that it mailed her a COBRA letter, Roberts argues that she never received it. Furthermore, Roberts argues that because NHC cannot produce a copy of the letter, NHC cannot prove that it gave Roberts adequate notice.

Section 1166(a)(2) provides little guidance on the manner in which an administrator must notify beneficiaries of their COBRA rights. Although the Fourth Circuit Court of Appeals has not addressed the issue, most

courts hold that a good faith attempt to comply with a reasonable interpretation of the provision is sufficient. *Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 236 (W.D.Tex.) (citing several cases), *aff'd*, 96 F.3d 1445 (5th Cir.1996); *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333 (D.Utah 1992) (citing several cases). Accordingly, courts have held that an administrator fulfills its duty to notify a beneficiary by sending notice via first-class mail to the beneficiary's last known address. *Myers*, 912 F.Supp. at 236 (citation omitted); *Truesdale v. Pacific Holding Co./Hay Adams Div.*, 778 F.Supp. 77, 81–82 (D.D.C.1991) (citing H.R.Rep. No. 453, 99th Cong., 1st Sess. 653 (1985) and ERISA Technical Release No. 86–2); *see also Brown v. Neely Truck Line, Inc.*, 884 F.Supp. 1534, 1542 (M.D.Ala.1995) (advising the defendant to implement a "systematic policy" to ensure that beneficiaries receive notice).

In *Myers*, although the plaintiff stated that she did not receive a COBRA notice, the court found that the administrator, who was also the employer, complied with COBRA's notice provisions. *Myers*, 912 F.Supp. at 236. The employer/administrator provided affidavits and business records to show that it mailed a COBRA letter. The court concluded that this effort was a good faith attempt to notify the plaintiff and dismissed the claim stating, "[p]laintiff did not produce any evidence that the mailing was not done pursuant to company procedure." *Id.* Furthermore, the court stated, "the employer presented evidence of the customary mailing practices used in its business and, more importantly, its business records reflected that the notice had been sent." *Id.*

Similarly, although Roberts claims that she never received a COBRA notice, NHC has presented evidence showing that it followed an established procedure in notifying Roberts. NHC has a system that automatically sends COBRA letters to employees upon the occurrence of a qualifying event. (Miller Aff. at 1. attached as Ex. B to Defs.' Mem. Opp'n Pl.'s Mot. Summ. J.) Under this system, when an employee is terminated, a personnel action form ("PAF") is sent to the payroll department at NHC's corporate office, and the payroll department enters the informa-

---

**2.** This time period may be longer if the plan is a multi-employer group health care plan and the plan so provides. 29 U.S.C.A. § 1166(c) (West Supp.1997).

tion into the payroll system. *Id.* If coverage is in place, and the information indicates a qualifying event, the system automatically produces a COBRA letter which is addressed to the employee's current address on the PAF and mailed in window envelopes. *Id.* at 2. A "COBRA report" is generated that is stamped with the date the letters were mailed. *Id.*

■ In addition to proving an established procedure, NHC provides evidence that this procedure was followed in Roberts's case. Although NHC cannot produce a copy of the actual letter mailed to Roberts, NHC does produce a COBRA report that, pursuant to the procedure described by Miller, is stamped with the date the COBRA letter was mailed to Roberts. (Defs.' Mem. Opp'n Pl.'s Mot. Summ. J. Ex. A.) Like the plaintiff in *Myers,* Roberts's only means of rebuttal is to argue that she did not receive the letter. As the cases cited above indicate, this is insufficient, and NHC has met its burden of proving that it complied with COBRA's notice provisions. Furthermore, NHC's established notification procedure, combined with a copy of the COBRA report stamped with the day the letter was mailed, fulfills any record-keeping requirements imposed under 29 U.S.C.A. §§ 1059, 1027.

### B. *Timeliness of Notice*

■ Roberts argues that even under NHC's version of the facts, NHC failed to provide timely COBRA notice because it fired Roberts on October 28, 1993, and did not mail the notice until twenty days later on November 17, 1993. Roberts contends that NHC should have mailed the notice within fourteen days of Roberts's termination.

Under COBRA, the employer must notify the administrator of a qualifying event within thirty days of the event. 29 U.S.C.A. § 1166(a)(2) (West Supp.1997). After receiving notification, the administrator has four-

teen days to notify the employee of the right to elect continuation coverage. 29 U.S.C.A. §§ 1166(a)(4) (West Supp.1997), 1166(c) (West Supp.1997). The question produced by these requirements is whether an administrator who is also an employer has fourteen or forty-four days to notify a beneficiary.

The Fourth Circuit has not addressed the issue, and other courts are split. *Compare DiSabatino v. DiSabatino Bros., Inc.,* 894 F.Supp. 810, 814 (D.Del.1995) (forty-four days) *with Hamilton v. Mecca, Inc.,* 930 F.Supp. 1540, 1553 (S.D.Ga.1996) (fourteen days); *Brown,* 884 F.Supp. at 1540 (fourteen days); *Burgess v. Adams Tool & Eng'r. Inc.,* 908 F.Supp. 473, 478 (W.D.Mich.1995) (fourteen days). However, the Department of Labor has recently expressed its opinion that the statute gives an employer/administrator forty-four days to notify a qualified beneficiary. Watson, et. al., *COBRA Health Continuation Benefits,* SB11 ALI–ABA 365 (1996) (stating, "the Department of Labor has clarified this issue in a letter dated April 11, 1995, addressed to Pieter J. Doerr, in which it states its opinion that an employer who is also the plan administrator has 44 days from the termination of employment ... to notify the qualified beneficiary").

■ The interpretation of the *DiSabatino* court and the Department of Labor is reasonable. Granting an employer/administrator forty-four days to deliver the COBRA notice will not harm the employee, because, were an employee to choose continuation coverage, the first premium would apply retroactively to provide continuous coverage from the date of the qualifying event. 29 U.S.C.A. § 1162(2) (West Supp.1997); *Lincoln Gen. Hosp. v. Nebraska State Educ. Ass'n Health Care Program Plan,* 792 F.Supp. 67 (D.Neb. 1991). Accordingly, after terminating Roberts, NHC had forty-four days to notify her of her COBRA rights.[3] Furthermore, even if the court had determined that NHC should have notified Roberts within fourteen days, based on these facts, the court would have concluded that a delay of a few days would not have warranted statutory damages or equitable relief.[4]

---

**3.** The Plan clearly states that NHC is the administrator. (NHC Health Benefit Plan at 19.). The Plan's designation of the "administrator" controls. 29 U.S.C.A. 1002(16)(A)(i) (West Supp. 1997). Although NHC tries to argue that NHC of Anderson is the employer and the NHC Health Administration Department is the administrator,

this is a stretch, and the court would appreciate a more direct confrontation of the issues in the future.

**4.** For a court reaching a similar result, see *Mercado Garcia v. Ponce Fed. Bank F.S.,B.,* 779

## C. *ERISA Discrimination*

■ Roberts makes a very weak claim that NHC fired her, in violation of 29 U.S.C.A. § 1140 (West Supp.1997), to avoid paying benefits to her. Section 1140 states, "It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C.A. § 1140 (West Supp.1997).

At first, in her complaint, Roberts claimed that NHC had fired her on November 1, 1993, after learning that she had been hospitalized on October 29, 1993. (Compl. at XII.) Now, in her summary judgment motion, Roberts makes a different argument. She states that she gave a doctor's excuse to NHC on or about October 23, 1993. (Pl.'s Mot. Summ. J. Opp'n Defs.' Mot. Summ. J. at 9). She speculates that NHC fired her because they knew of her medical condition. *Id.*

■ The Fourth Circuit Court of Appeals applies the *McDonnell Douglas* burden-shifting proof scheme to ERISA discrimination cases. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir.1991) (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2nd Cir.1988)). Additionally, the Fourth Circuit has applied this proof scheme to summary court would appreciate a more direct confrontation of the issues in the future. judgment proceedings. *See, e.g., Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315, 1316 (4th Cir.1993) (ADEA case).

### 1. *Prima Facie Case*

■ In the first stage of the *McDonnell Douglas* scheme, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). To establish a prima facie case, a plaintiff must provide evidence that: (1) she attempted to exercise her rights under an ERISA plan; (2) she suffered an adverse employment action; and (3) there is a causal connection between her activity and the adverse action. *See McNairn v. Sullivan*, 929 F.2d 974 (4th Cir.1991) (Title VII case outlining a similar three-part test) (citations omitted).

■ Roberts has failed to prove the third element. Ms. Leppard, who terminated Roberts, was not aware that Roberts was hospitalized or about to be hospitalized. (Leppard Aff. at 2–3 attached as Ex. B to Defs.' Mem. Supp. Mot. Summ. J.) In proving causation, the plaintiff must prove that the person taking adverse action against them knew that the plaintiff was about to exercise her rights under a plan. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 n. 9 (4th Cir.1985) (Title VII case stating that an employer's knowledge is not a distinct element, but is subsumed in the causation element), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

### 2. *Defendant's Nondiscriminatory Reason*

■ Even if Roberts had established a prima facie case, the court would grant summary judgment for NHC because Roberts offers no evidence to rebut NHC's legitimate, nondiscriminatory reason for firing her. *See Hicks*, 509 U.S. at 510–511, 515, 113 S.Ct. at 2748–49, 2751–52 (holding that once the employer offers a legitimate, nondiscriminatory reason, the presumption of discrimination created by the employee's proof of a prima facie case "drops out" and the burden is on the employee to prove *"both* that the reason was false, *and* that discrimination was the real reason").

NHC states that it fired Roberts because she failed to report to work or call for two days in a row. (Leppard Aff. at 1–3.) Viewing all facts and inferences in Roberts's favor, the court concludes that she has not provided sufficient evidence for a fact-finder to conclude that NHC's nondiscriminatory reason was false or that discrimination was the real reason for her termination. Therefore, it is

**ORDERED** that the defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

F.Supp. 620, 631 (D.P.R.1991) (determining that notice was adequate, even though it was late, so long as notice was ultimately given and a sixty-day period was in fact allowed for the COBRA election), *aff'd,* 979 F.2d 890 (1st Cir.1992).